## Chipin v. DeHaan

*Moss & Moss*, for plaintiff.

*A. M. Cohen*, for defendant.

BOK, P. J., June 2, 1947.—This is a bill in equity for an accounting arising out of a verbal agreement between the parties.

The facts are not in dispute, and counsel, without filing requests for findings and conclusions, are willing to have the case disposed of on the single question of law involved: Does plaintiff have the right to see the books of the Baltimore Legging Company?

This question must be answered in the negative.

Defendant and two other men were partners in the Baltimore Legging Company. He had a one-half in-

terest in it and agreed to sell (or assign) to plaintiff one quarter of his one-half share. Plaintiff, without becoming a partner in the company, put up a total of $3,125, and was to share in defendant's profits and losses from the company to the extent of the indicated percentages. The agreement between the two men has terminated. Plaintiff has received from defendant a total of $5,762.68 as his share for the years 1943, 1944 and 1945, and defendant admits that $2,204.55 more is due to him as a final accounting. Defendant does not deny plaintiff's right to examine his books.

Plaintiff is dissatisfied with these figures and believes that more is owing to him. Not knowing how much it is, he wishes to see the company's books in order to determine how much that partnership owes defendant and hence how much defendant owes him.

Plaintiff admits that he was never a partner. He testified: "No, I am not. I am a partner in one-quarter share of Jule DeHaan's interest in the Baltimore Legging Company." In establishing the terms of his agreement with defendant, he stated it thus:

"I asked him about whether I could join in the original agreement between the three original partners, and he said that that agreement was closed, but that I will participate in 25 percent of his half interest in the original agreement, and when he withdrew any money he would give me 25 percent of whatever he withdrew or would call upon me for 25 percent of any losses that he might be called to put up."

Plaintiff referred several times to his "interest in Mr. DeHaan's investment", or "share in DeHaan's interest", or "share of his share", and when asked what the practice was as to paying him, he said, concerning defendant: "Well, soon after he made a withdrawal from the Baltimore Legging Company, he would turn over one quarter of that withdrawal to me."

It is therefore clear that a partnership existed between plaintiff and defendant but not between plaintiff

and the Baltimore Legging Company. He had no right to any cash until defendant made a withdrawal from the company and was not obliged to put up any for losses until defendant had done so. It is quite possible that the company has money that defendant might have withdrawn but did not, for a variety of reasons. Had these reasons been fraudulent or designed to deprive plaintiff of his share, a different problem might exist, but fraud is neither alleged nor proved, and I must therefore assume that whatever share defendant may have allowed to remain in the company without withdrawing it has been left there for defensible business reasons. Plaintiff's right to an accounting can therefore run no farther than to defendant and his books.

The point is governed by the Uniform Partnership Act of March 26, 1915, P. L. 18, part. V, sec. 27, 59 PS §74, which reads:

"(1) A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitles the assignee to receive, in accordance with his contract, the profits to which the assigning partner would otherwise be entitled.

"(2) In case of a dissolution of the partnership, the assignee is entitled to receive his assignor's interest, and may require an account from the date only of the last account agreed to by all the partners."

This clearly covers the case of a partner selling his interest—and a fortiori a part of it—to someone who does not in turn become a partner. The section was undoubtedly designed to facilitate partnership business and to allow the partners to deal with their own

interests in it without disturbing the partnership agreement or the continuity of its affairs. An example of the way it works is shown in White et al. v. Long et al., 289 Pa. 525 (1927) in which it was held that the assignment of his interest by a father to his son did not dissolve the firm or alter its obligations and rights under a lease.

The act prevents assignees from interfering in partnership affairs. If such an assignee had the right to inspect the partnership books, he would soon assert the right to question particular transactions of the firm, challenge the judgment of the partners, demand explanations, and in general make a nuisance of himself. The act wisely prevents this sort of thing from happening. Plaintiff says that the partnership would not be involved by his examining its books, but once he got at them it is only common sense that he would try to find the greatest possible amount due his assignor and then to challenge the partnership's right to withhold it. In short, he is asking the court to give him the rights of a partner when he never contracted for them himself.

Plaintiff also filed a rule to show cause why an assessor should not be appointed, but does not appear to press it unless he is allowed to see the partnership books. This rule is dicharged.

### Decree nisi

And now, June 2, 1947, plaintiff's prayer for an accounting is granted and plaintiff is given leave to examine such of defendant's books as relate to his withdrawals from and payments to the Baltimore Legging Company, for the purpose of determining the value of plaintiff's one-fourth share of defendant's one-half interest in the said company, in accordance with this adjudication. This right to examine defendant's books shall be exercised within 30 days, unless extended by the court for cause shown, or unless exceptions are filed to this decree sec. reg.